UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JENNIFER ANNE KINAS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:17-CV-165 RLM-MGG |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

Jennifer Kinas seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court remands this case for further proceedings.

Mrs. Kinas asserts disability as of January 31, 2013. The ALJ found that:

(1) Mrs. Kinas has insured status through December 31, 2018;

(2) Mrs. Kinas didn't engage in substantial gainful activity from January 31, 2013, the alleged onset date, through the date of the ALJ's decision;

(3) Mrs. Kinas had severe impairments including a triple negative breast cancer of the left breast, status post lumpectomy; right shoulder

bursitis; neuropathy of the hands and feet; and anxiety. Her urinary frequency wasn't a severe impairment;

(4) Mrs. Kinas didn't have an impairment or combination of impairments that meets or medically equals the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(5) Evaluating Mrs. Kinas's mental functioning using the "paragraph B" criteria, the ALJ found Mrs. Kinas had:

    a) Mild limitations in activities of daily living;
    b) Mild limitations in social functioning;
    c) Moderate limitations in concentration, persistence or pace; and
    d) No episodes of decompensation (Mrs. Kinas has insured status through December 31, 2018;

(6) Mrs. Kinas didn't engage in substantial gainful activity from January 31, 2013, the alleged onset date, through the date of the ALJ's decision;

(7) Mrs. Kinas had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) "except that she can lift up to 20 pounds occasionally and up to 10 pounds frequently. She can stand and/or walk about 6 hours and sit up to 6 hours in an 8-hour workday. She can sit and/or stand if not taken off task. She can occasionally climb ladders, ropes, scaffolds, ramps, stairs, balance, and stoop, kneel, crouch or crawl. The claimant can reach forward and to the side, with the bilateral upper extremities occasionally. She

can occasionally reach overhead with the bilateral upper extremities. The claimant can push and/or pull with the bilateral upper extremities occasionally. The claimant can occasionally handle and finger with the bilateral upper extremities. The claimant can occasionally operate foot controls with the bilateral lower extremities. The claimant is limited to simple, routine and repetitive tasks, but she is unable to perform work that would require directing others, abstract thought or planning, and which would involve only simple work related decisions and routine workplace changes. The claimant is limited to work that can be performed at a flexible pace, free of fast paced production requirements, and free of quotas. The claimant is limited to work that does not require tandem tasks or teamwork where one production requirement is dependent upon the prior;"

(8)  Mrs. Kinas was unable to perform any past relevant work;

(9)  There were a significant number of jobs in the national economy that Mrs. Kinas could perform including investigator, dealer accounts (DOT # 241.367-038) and counter clerk (DOT# 249.366-010).

Based on those findings and conclusions, the ALJ decided that Mrs. Kinas wasn't entitled to disability benefits because she wasn't disabled as defined in the Social Security Act. When the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530

U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Mrs. Kinas asserts that the ALJ improperly weighed the treating source opinions, improperly evaluated the credibility of her subjective complaints, and made vocational findings upon legal error and without substantial evidence. Mrs. Kinas asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings.

## I. STANDARD OF REVIEW

The issue before the court isn't whether Mrs. Kinas is disabled, but whether substantial evidence supports the ALJ's decision that she is not. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000), but, instead, must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's

decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). "At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence." Ali v. Colvin, No. 2:14-CV-305, 2015 WL 5474636, at *2 (N.D. Ind. Sept. 15, 2015).

## II. DISCUSSION

Mrs. Kinas first argues that the ALJ improperly weighed the opinion evidence of her treating physicians, Dr. Gong and Dr. Chughtai. The ALJ acknowledged that Drs. Gong and Chughtai were Mrs. Kinas's treating neurologist and primary care doctors, but didn't acknowledge that their opinions were entitled to considerable deference even if they didn't meet the criteria for controlling weight. The ALJ should have considered the record as a whole in evaluating the opinions, instead of selectively evaluating specific limitations in the opinions based on isolated evidence in the record to reach unsupported conclusions.

Both of Mrs. Kinas's treating physicians offered several medical opinions:
– Mrs.Kinas could occasionally lift less than 10 pounds.

5

– She could stand and/or walk less than one hour in an 8-hour workday.

– Pushing and/or pulling is limited in the upper/lower extremities due to neuropathy.

– Handling and fingering is limited to occasionally due to the neuropathy.

The commissioner argues that the ALJ gave portions of this opinion some weight, because they account for Mrs.Kinas's neuropathy to her hands and her mild handgrip weakness.

The ALJ didn't give much weight to the opinion that Mrs. Kinas can occasionally lift less than 10 pounds because she found that Mrs. Kinas had "normal strength" in the upper extremities. The ALJ also found that Mrs. Kinas was "doing well, had no dyspnea and her energy had improved" after she completed her chemotherapy and radiation. The ALJ didn't give much weight to the opinion that Mrs. Kinas could stand and/or walk less than one hour in an eight-hour workday, either. The ALJ found that Mrs. Kinas had "normal gait, normal station, and normal strength in the lower extremities."

The ALJ also gave little weight to the treating physicians' opinions about Mrs. Kinas's mental limitations. Although the treating physicians opined that Mrs. Kinas has no ability to function independently, they also reported that Mrs. Kinas has good use of judgment and mild memory loss. The ALJ also considered some of Mrs. Kinas's testimony: she stays home during the day while her husband is at work, she makes simple meals for herself, performs household chores, watches

TV, interacts with friends and relatives by either using the phone or texting, and uses the computer. The ALJ found that Mrs. Kinas's testimony didn't seem to support the treating physicians' opinions of her inability to function independently. The ALJ also noted that neither Dr. Gong nor Dr. Chughtai are qualified mental health specialists; their practices are neurology and family medicine, respectively.

The Commissioner asserts that the ALJ properly considered the opinions of Drs. Gong and Chughtai; she specifically explained why she accepted certain parts of their opinions and not others. The ALJ didn't simply "rubber stamp" the opinions of the state agency consultants. Although the ALJ gave great weight to the opinions of the state agency medical and psychological consultants, the ALJ found that Mrs. Kinas was somewhat more limited than they thought in certain areas.

Mrs. Kinas says the ALJ ignored contrary evidence, such as the treating physicians' explanation that the upper extremity limitations were necessary because of pain and edema following surgery for breast cancer (with lymph node removal), and the physicians' findings of neuropathy following chemotherapy and post-chemotherapy neuropathy. Mrs. Kinas asserts that her treating physicians' opinions and explanations are supported by the medical record, including clinical findings/reports of weakness in the bilateral upper extremities, hand numbness and tingling that disturbed Mrs. Kinas's sleep, hand weakness that made it

7

difficult for her to open containers, difficulty with fine motor skills, and bilateral upper extremity weakness with mild handgrip weakness. In addition, Mrs. Kinas frequently had abnormal clinical findings during her treating source examinations, which she says the ALJ didn't contrast with the more benign evidence.

    The ALJ weighed the opinion evidence of Mrs. Kinas's treating physicians improperly. "If [the treating physician's medical opinion] is well supported and there is no contradictory evidence, there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it. Once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight." <u>Bauer v. Astrue</u>, 532 F.3d 606, 608 (7th Cir. 2008). At that point, "the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh . . . [t]he [treating-physician] rule goes on to list various factors that the administrative law judge should consider, such as how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, and so forth. The checklist is designed to help the administrative law judge decide how much weight to give the treating physician's evidence." <u>Id.</u> Seeming differences between medical opinions and the record don't always constitute valid reasons for discounting the opinions of treating physicians. <u>Oakes v. Astrue</u>, 258 Fed. App'x 38, 44 (7th Cir.

2007); *see also* Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003) ("[a] contradictory opinion of a non-examining physician does not, by itself, suffice.").

When addressing Mrs. Kinas's physical restraints, the ALJ indicated opinions to which she gives little weight, and explained that discounting by setting forth facts about Mrs. Kinas's non-work activities. With respect to some of the opinions, the ALJ's explanation continued with a "furthermore" and a reference to what might be a contradictory part of the doctor's report, such as tests given on an examination day for extremity strength, or memory or gait. But the primary reason for discounting the treating physicians' opinions—to the court's understanding—was Mrs. Kinas's daily activities, her family vacation, and weekend camping trips. The ALJ never circled back to explain precisely why those activities are inconsistent with the treating physicians' opinions.

Lastly, Mrs. Kinas argues that the ALJ didn't properly evaluate the credibility of Mrs. Kinas's symptoms and limitations. Regarding Mrs. Kinas's credibility, the ALJ stated:

> The claimant prepares simple meals, dusts, vacuums, and does the laundry (hearing testimony). She reported that she shops with her husband once a week, and that it takes a few hours, despite testifying that it usually takes about 20 minutes. Moreover, she reported that she goes to Aldi's, Wal-Mart, church, doctor appointments, out to eat, and to the Pink Survivor's support group. The claimant, despite alleging disabling neuropathy to the hands and feet, was able to make the 13 hour drive to Florida last year, where they rented a condominium and spent time on the beach. Moreover, she testified that in the summer, they go camping about once every three weeks to Potato Creek State Park. Despite alleging brain fog and an inability to concentrate, the claimant watches 3 hours of TV daily, including

9

reality TV, crime shows and documentaries. She reads magazines and online. She texts others, goes on Face book, and plays games on the computer. While she testified that she does not handle the household bills, she further testified that her husband has always had primary responsibility for the financial affairs.

The commissioner maintains that the ALJ considered the testimony of both Mrs. Kinas and her husband concerning her limitations. Based on the testimony, the ALJ limited Mrs. Kinas to simple, routine and repetitive tasks, which is basically performing the same job on a daily basis, and to work that wouldn't require directing others, abstract thought or planning, and which would involve only simple work related decisions and routine workplace changes.

But the ALJ didn't explain how her activities of daily living equated to the ability to sustain a full-time job. The substantial evidence standard requires the ALJ to build a "logical bridge" between the evidence and her credibility finding conclusion. Pepper v. Colvin, 712 F.3d 351, 362 (7th Cir. 2013). While this standard doesn't require an ALJ to evaluate every item of evidence in the record, it does require that she grapple with evidence that might run counter to her conclusion, and highlighting only the favorable evidence isn't sufficient. *See* Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected.").

The ALJ was plainly struck by Mrs. Kinas's ordinary activities. Fifteen times in a nine-page stretch, the ALJ referred to Mrs. Kinas's ability to dust, do laundry,

run the vacuum, text, use the computer, make simple meals, shop with her husband, go to church and to her cancer survivor meetings, watch 3 hours of TV daily (including reality TV, true crime shows, and documentaries), read magazines, go on social media, play easy computer games, go camping every three weeks, and make a thirteen-hour ride to Florida and back.

"The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer." Ghiselli v. Colvin, 837 F.3d 771, 778 (7th Cir. 2016) (*quoting* Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) (also collecting cases)); *see also* Stage v. Colvin, 812 F.3d 1121, 1126 (7th Cir. 2016) (finding that the ALJ improperly based his adverse credibility determination on, among other things, the claimant's ability to care for herself and her grandchildren); Roddy v. Astrue, 705 F.3d 631, 639 (7th Cir. 2013) (observing that "[w]e have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate to an ability to work full-time.").

The court of appeals warned in Ghiselli against using successful performance of activities of daily living as a basis to find claims of disability not credible, and this case underscores that warning. Despite the frequency of reference to those daily activities, the ALJ never said just how those activities

11

refuted what Mrs. Kinas, her husband, and both treating physicians say. The ALJ didn't say, and couldn't appear to know from this record, how long it takes Mrs. Kinas to do those tasks, or how well she does them; without that information, the court can't determine how those activities led the ALJ to discount the claims of neuropathy. Without some way to evaluate Mrs. Kinas's understanding and retention, television shows and computer activities wouldn't seem to tell the court anything about her memory loss. Without knowing the activities Mrs. Kinas engaged in while camping or on vacation, there's no logical bridge from those activities to Mrs. Kinas's ability to find work in the job market. On remand, the ALJ should ensure that her credibility determination is reasoned and supported.

III. CONCLUSION

The evidence of record isn't so one-sided as to justify an order for benefits; the ALJ's opinion lacked explanation, not evidence. The court REMANDS this case for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: <u>March 12, 2018</u>

/s/ Robert L. Miller, Jr.
Judge
United States District Court